May it please the Court, Eric Pinker representing Preston Hollow, LLC. Your Honors, this case presents a unique Catch-22 based entirely on the defendant's unlawful exercise of government power and their admitted violations of multiple municipal government laws. Now, you're bringing a takings claim under the federal constitution, is that correct? It is correct, yes. So that would have to be by a governmental entity acting in its governmental capacity, is that right? Yes, Your Honor. The government has put us in the following Catch-22. On the one hand, they have moved to dismiss by arguing that this case cannot be a taking because it sounds solely in contract, and simultaneously, they have argued that the contract is void ab initio and a legal nullity based on their own repeated violation of statutory and regulatory laws applicable to governmental municipal entities. That constitutes, I submit, a clear taking under Section 1983 that is compensable to Preston Hollow. What happened here is, I submit, novel and unique. The defendants negotiated, executed, and consummated a loan agreement pursuant to which they received $12.5 million and encumbered an additional $2.5 million. Those funds were the pre-existing property of Preston Hollow, property over which it They spent the entirety of those funds, and they spent those funds for public use. They were in the process of developing a mixed-use real estate project. They bought property for public use. They paid government contractor expenses. They funded the city of Hutto for expenses that it had and intended to incur in the future, and it funded settlement of a lawsuit that the city had with its first developer. So they negotiated for, consummated, and then spent the entirety of those funds for public use. They have That seems to be your key problem, right? These are negotiated. These are agreed. Those are the words that you're using. That is what we thought had happened, Your Honor. So at best, just trying to charitably construe your argument, you're essentially saying sort of a fraud in commercial transactions type theory? No, Your Honor. We're not alleging a fraud, and we haven't alleged any state court cause of action. We have alleged a taking based on their conduct in disavowing and asserting that the contract was void ab initio, which occurred months after they negotiated, executed, consummated, and spent the funds at the But if you're talking about essentially bad behavior in a contractual setting, that's not a taking. That's a breaching. Well, Your Honor, I submit it's a taking because it is governmental conduct. It is conduct done It's conduct by a government, but it's conduct by a government. Conduct by a government. The question is what kind of conduct. Well, it's government conduct, pardon me, by a government under color of law. The only basis on which they allege voidness is their failure to comply with multiple statutes governing the behavior of governmental organizations, and specifically they allege that they violated their Open Meetings Act requirement, that they violated the requirement to submit a transaction to the Attorney General for review, that they violated the anti-delegation provisions by delegating governmental authority to Cottonwood Development Corporation, and they allege that they violated municipal law by granting liens on governmental property. The misconduct, as Your Honor put it, is based on their exercise of governmental authorities under governmental powers under color of state and local law, and that is, we submit, a taking, Your Honor, it is a taking that occurred at the time that the city and Cottonwood declared the transaction void, because at that point in time, they received funds in exchange for no consideration. Just to simplify it for a moment, your theory is the entity made a series of commitments to your client, a series of contractual commitments to perform, to purchase, et cetera, et cetera, and that for a variety, based on a variety of theories, the government's trying to get out of those obligations. I believe, Your Honor, I think that's fair. They negotiated a series of— That sounds entirely contractual. Your Honor, I believe there could be a contract claim alleged, and I should make that clear at the beginning. We elected to bring a single silver bullet cause of action for taking, because we think that cause of action most precisely aligns with this unique set of facts. I believe other state law claims could have been brought— But I mean, this set of facts is not that unique. I mean, governments enter into contracts all the time, and they're alleged to breach all the time. Well, the unique— Do you have any—what's your best case for the proposition that contract-based misconduct or alleged misconduct gives rise to a taking claim? Well, we're not alleging contract-based misconduct, Your Honor. What's unique, I submit, is the government asserting after receiving and spending the money, the government asserting that the agreement under which they obtain funds is void ab initio and of no legal consequence. By definition, that means they've received millions of dollars for no consideration, which is a straightforward taking case. I submit in response specifically, Judge, to your questions about cases, we have not located a case, nor has the other side, where a governmental actor negotiated an agreement, spent the money, and then declared the agreement void ab initio and refused to return the money. I'm sure— How much money are we talking about that has not been returned? I'm sorry, I didn't— How much money is it that has not been returned? Your Honor, $12.5 million, $2.5 was in escrow and is now the subject of a state court order. So, the essence, I guess, is that they keep the $12 million for what? That would be my question to them and to the court. They have received $12.5 million— It will be their question to them, but I will get your reaction to it, too. Well, and the best answer is, they think they have got it in exchange for nothing. They have seized that money and returned no valid consideration. That is their position. They have disavowed and declared void the contract pursuant to which that consideration changed hands. That is an unlawful exercise of dominion and control over a private citizen's funds taken for public use. And that, we submit, is a takings case and should have, at a minimum—we believe it's a compelling taking case, but at a minimum—should have survived a 12B challenge for lack of jurisdiction and for failure to state a claim as they have moved. Do you agree that the actions by the city or the development corporation, at least by the city, was taken in its proprietary capacity? Well, Judge, I don't believe that I do. The government—the city, in creating Cottonwood, did so as an exercise of its governmental duties. The city and Cottonwood were both developing a mixed-use development. Portions of that would have been proprietary and portions of which are governmental because they have exercised unique governmental functions to do so. And the basis on which they are asserting voidness is all governmental functions. Things of Open Meetings Act, anti-delegation, attorney general review, and private property being not—pardon me—governmental property being not susceptible to foreclosure and liens. All of those are governmental in nature. And so while there are aspects which could be characterized that way, I don't agree with that, Your Honor. I believe this is a mix for governmental function as being exercised here by the two defendant entities. I want to, if I may, discuss the basis for the lower court ruling because the magistrate judge put it very precisely on page 556 of the Record on Appeal. She wrote, and the district court adopted this in its entirety, Preston Hollow voluntarily entered into a loan agreement with Cottonwood. Preston Hollow merely alleges a claim for breach of the loan agreement. The court, therefore, finds failure to state a facially plausible claim, a facially plausible claim being the key and operative standard. That conclusion we submit is wrong in three critical ways. First and foremost, it completely ignores the fact that the alleged consideration on which the magistrate judge relied, a contract, was declared void by the defendants. They are not authorized, they are not empowered, they should not have the right to both declare the contract void and yet require and insist on litigating solely under that agreement. Does your theory turn every contract dispute with a government into a takings claim? Absolutely not. Why not? Because, number one, it would require, first, the government to claim that a contract is void, not because of something relating to the contract. I don't see why your principle would be limited to that. It doesn't enter into any garden variety contract situation where the other entity thinks that the government has breached and, as a result, harmed the party. That's a taking of some kind, isn't it, under your theory? Judge, under our theory, the taking occurs because they declare the contract void based on their misconduct. There's no allegation. Why limit it to that? What if the government says, I didn't breach, I performed, and the other party insists, no, you didn't perform to the detriment of millions of dollars in damages? That's a taking, too. Well, I think that is a dramatically different case than what we have here, and so I don't think we have addressed it in our pleadings. Our pleadings are limited to the conduct at issue here, where they declare a contract void, and as a result— I'm just trying to understand the intellectual principle that calls this contract of dispute a takings case, but not some other contract dispute. Well, so two comments, if I may, to that, Judge. First, it is premised on their disavowal, their assertion that a contract is void. I think that is a unique factor. This isn't a claim that the contract was usurious or in some manner a provision was wrong. This is the government saying, because we, the government, didn't comply with governmental laws, we declare the contract void. I believe that is a unique proposition and limits it, and certainly limits it well below traditional breach of contract cases. The second point I would make is by reference to the teachings of Nick. What Nick clearly said in 2019, the Supreme Court decision, is that you have a takings case the moment property is taken, it arises at that time regardless of the existence of other forms of relief. So the United States Supreme Court— Nick is an exhaustion case. What does that have to do with the substantive meaning of the word taking? The Nick case on page, I'm sorry, 2170, I believe it was, held that you have a takings case without regard to whether you are— You don't have to exhaust. You don't have to go through the state process. You can bring a federal action right away. Correct. It doesn't tell you what the federal action is, what the substantive limits are. I think, Your Honor, I agree with that. It tells you that once the government has taken property, it doesn't matter if you have a contract claim. It doesn't matter if you have another state court claim. It doesn't matter if there's an administrative procedure. You have a right to bring that takings case specifically in federal court regardless of whether you bring it with other state law clauses of action and regardless of whether you have previously litigated other state court clauses. It says if you have a federal takings claim, you have it right now. Yes, Your Honor. It doesn't say whether you have a federal takings claim. I agree with you, Your Honor. And we have—we submit a takings claim because we have met the elements. Taking a property for public use without returning any consideration at all, and that's not me saying it, that's the government saying it. They have taken the position that they returned no consideration in exchange for those funds. They have simply taken $12.5 million of a private citizen's funds in exchange for nothing and stated an intent to hold it. That is, I submit, Your Honor, in a unique fact pattern, but one directly covered by the Fifth Amendment taking provision and applicable to the municipalities through Section 1983 and the 14th Amendment. The fundamental mistake we submit in the holdings of the district court and the magistrate judge is ignoring the declaration that the contract is void, ignoring the teachings of Nick, which said there is not a requirement to litigate a contract claim first, which is what the magistrate judge held. I would also, Judge Ho, direct Your Honor to page—or rather footnote 60 of our opening brief, which cites cases for the proposition that a contract case is not inconsistent with a taking case. And then fundamentally, even if Nick did not supersede and rescind the requirement that you first litigate in state court, and we believe it clearly did, the elements of a duplicative contract defense cannot be met in the face of a void contract. There is not a duplicate contract claim if the contract is void, and there is not an available remedy if they have asserted the contract is void. I submit, Your Honor, and I see my time is out, that they cannot require us to litigate a state breach of contract case when they are loudly and repeatedly asserting that the contract was void because of their misconduct. I see my time is up. I'm happy to answer additional questions. Can you save time for rebuttal, please? I have, Your Honor. Thank you. All right. Mr. Hyde, let me ask you a question straight off. How do you claim $12 million belongs to you, simultaneously declaring that the contract of which you gave this money is void? Now, the city just gets a free gift of $12 million because of your unilateral declaration that it's void? Well, Judge Higginbotham, I think that what the plight of the appellant has done is it has condensed the timeline from which these circumstances have occurred. If you look at the timeline . . . Well, regardless of the timeline, today, you say that you have $12 million, and you have no explanation for how that's been earned in any fashion. It's their money. Could you have declared the contract void? I do, Your Honor. Now, is that true or not? The answer is that they brought their silver bullet claim without bringing any other type of equitable relief in order to recover those funds. And I believe that Res Judicata, in this case, because they failed to bring those, even despite we asserted a breach of contract claim in the federal . . . to cover the breach of contract. How did the city earn that money? It was a default as a result of their misconduct. They failed to bring appropriate causes of action. There's a procedural default as a result of some procedural default in the court. City claims a $12 million bounty. That's essentially what it sounds like. The statute of limitations applies, just like waiver applies and has those issues. This is exactly that point. We brought a claim of breach of contract. And in that breach of contract claim— It's not going to be a breach of contract. You said unilaterally it's void. That's the timing, Your Honor. If you look at the timing, what you find is that on February 13th is when this loan was so-called closed. On February 13th, this was a loan for $15 million, of which Preston Hollow only distributed— allowed for funding out of the title company 12 1⁄2. And so before this thing even started, we had a breach of contract. In April, Preston Hollow unilaterally declared default on the contract. And in May, it started to take the foreclose on government property. That is when the city then responded in an assertion after reviewing the documents and identifying problems with the transaction of which we were not involved in. And so that's how— So it's not that we stepped up and said, it's our free money. It's they're going to take $22 million of our property. And we say, hold on, let's look at this. This looks void. Let's work this out. And the way that we worked it out is they're suing us for taking it. Just to be clear then, put aside res judicata, all those issues. On day one, could they have filed an unjust enrichment or that sort of— Absolutely, Your Honor. And that's the point. In this case, when the dismissal occurred, they had plenty of opportunity. They had a compulsive claim under 13 to file after we filed our breach of contract. As he said, they elected that they were only going to bring a silver bullet claim. When that silver bullet missed, they put in jeopardy. What was your defense to the silver bullet claim? Did you have a defense to it? Well, yes, Your Honor. First of all— It entitled to the money. Let me share with the court the language here, because when you're dealing with government actors, the rules associated with contracting are different. There is no implied authority for a governmental body. For a governmental body to act, there has to be a majority at a public meeting that approves and authorizes the conduct. In this case, cited by the City of Bonham v. Southwest Sanitation, which is a Texas app case from Texarkana that was relied on by this court in 1998 in Delaware v. City of Houston in a very similar situation. The City of Houston in that case had engaged in negotiations and worked with a person to create a compost facility for the City of Houston.  But the contract was not approved by the City Council. And so even though he spent a significant amount of investment in this compost, the Fifth Circuit Court of Appeals in 1998 stated that that was insufficient as a matter of law because that contract was not approved. I understand your argument that the contract is void. But the jump for that, though, is your entitlement to the $12 million. But the persons who are responsible for governmental units are charged with liability of their limits and authority and are bound at their peril to ascertain if the complicated contract is properly authorized. This is a sophisticated, multi-million dollar transaction. And I'm working with unsophisticated elected local officials of which Preston Hollow comes in, swoops in, takes advantage of under circumstances, that creates a mess of the contract, then tries to accelerate the contract to take $22 million away from the City. And they're complaining that we reviewed the contract and as a matter of law, the contract is void. By the way, Your Honor, I wish the City had that authority to declare a voidness that was effective. There is no... I'm sorry, Counselor. I still don't hear the answer to your entitlement to the money. I'm sorry. What I hear is your justification for declaring the contract void. I follow that argument. You're a very good advocate and I understand that. But what that leads to is that you don't have an enforceable contract. That's correct. But you're still entitled to the money. On the basis of res judicata. Res judicata? Yes, Your Honor. And how was that litigated? That was litigated through the 1286 order prepared by the magistrate, which was approved by the district court judge. They waived away the... You're taking advantage of some procedural default of sorts to claim $12 million. Well, Your Honor, Federal Rule Civil Procedure 41B, I'd like to point out, talks about involuntary dismissals and in it, excuse me, my document's a little out of place, it discusses what is and is not subject to the treat non-merits. And what it says, it's got two different parts. One has three provisions of wrongdoing, where a court will involuntarily dismiss because somebody didn't follow the rules, they failed to appear to court, those things. Then it says, in all other cases, other than three types, one is lack of subject matter jurisdiction and lack of failing to bring in a proper party, and there's one more that escapes me, all other involuntary dismissals are on the merits as a matter of Federal Rule of Civil Procedure 41B. And in that case, Your Honor, the 12B6 demonstrates in the magistrate's order that was adopted by the district judge that the court reviewed its jurisdictional provisions, found that it had jurisdiction, and then went forward on the 12B6 as to whether or not a plausible takings claim could be made. And when it did that, that was a decision on the merits in this case, which then invokes res judicata because they put this $15 million . . . Let's say we affirm, just hypothetically, obviously not previewing. Are we deciding what the res judicata effect of that ruling would be in a future unjust enrichment case? Let me explain what I'm saying. The other side, I think, has already said at the podium, in the event that they were to affirm, they would then proceed to file a contract claim in state court or unjust enrichment in all these claims. We're not deciding today whether they're allowed to do that or not, are we? I believe you are, Your Honor. In the declaratory judgment claim . . . I know you would argue res judicata in that future claim. I'm not trying to get you to waive that argument. My point is that has nothing to do with what we're deciding today. All we're deciding today is whether there's a takings claim, not whether . . . The appellant has presented to the court an argument that the dismissal with prejudice should be revised by this court if it is appropriate to dismiss. It should be dismissed without prejudice. That is before the court, and we believe that that's inappropriate for this court to do so. We believe that the court provides a very wide . . . With prejudice, I assume, as to the takings issue. Correct. Not as to any, whatever other claims may exist. Right, but if it is a dismissal with prejudice on the merits, as 41B suggests, then res judicata applies. I understand that. The question is, what is that effect on some other claim? That's the issue that's gone before us. Our position would be it's a blanket . . . Your suggestion, as I understand it, is that res judicata means that it forecloses in causes of action that were brought or reasonably could have been brought. That's correct, Your Honor. And they could have brought a breach of contract claim. They could have brought a deck action. They could have brought an implied contract. They could have brought a quantum merit. But I think, Your Honor, they didn't because then the actual method by which they make the sausage that demonstrates their wrongdoing and those improprieties would then become public record. And with regards to those behaviors, once that becomes public record, that has a significant value. That's why they're skimming over the fact that all they needed to do is get a deck action. We could have gone in and gotten an agreed judgment that the contract was void and moved forward on that. But they've refused. Why do they refuse to do that if they are essentially agreeing that it is void in their arguments, but they won't allow that to occur? They do that so that they can tie up the vendor's liens that are on the $22 billion of property, which, if we're not there, the corporation . . . And I want to make this very clear. The corporation does not have sovereign powers. And so when we start talking about the government, that's trying to, again, conflate a distinct local government corporation, which is a nonprofit corporation, which is what I call superpowers that have come up through Chapter 431 of the Transportation Code that gives it government unit status. What it does is it's just like in a big corporation where they have affiliates and subsidiaries. This is an organization that does not bind that to adequate taxes. It's an organization that can move quickly in order to try to develop and implement . . . Can I take you back to your 12B6, 12B1 differentiation, that division of whether or not you're resolving the merits of the claim itself? Inheriting that is a . . . What was the federal . . . What was the content of that? 12, what might would be a 12 . . . Most of the dismissal were one of jurisdiction being read as 12 rather characterized, not as 12B1, but as 12B6. And that's because of the presence of what element? The lack of jurisdiction argument was that . . . Well, you say it's on the merits. I understand, but what? What was the issue on the merits? That the allegations, if assumed as true, would not provide any relief associated with that case. And without doing that, the court would lack jurisdiction. The court reviewed the case, found the case had jurisdiction, and then looked directly at the 12B6 and granted the 12B6. And so it did not grant the case on subject matter jurisdiction grounds. And it's very clear that it did not. It didn't have grants. The 12B6 would be on the merits. Correct, and not 12B1. But you move from 12B1 to 12B6 because there is . . . That decision that's being made, it's got an element in it that is non-jurisdictional. But there would be no jurisdiction by that . . . I'm having trouble articulating exactly, as I hear your argument, what that non-jurisdictional component of that was. The magistrate and Judge Avery . . . They didn't assert the contract claim. You didn't assert the silver bullet claim. The takings case, they reviewed the takings case and said that the plaintiff met the principal burden in order to trigger the court's jurisdiction as to their allegations. Well, if we're seeing non-jurisdictional takings, it's not a takings. Once they decided it was jurisdictional, then they went to the case itself and said, this is a contract dispute. This is not a taking as alleged in the pleading, and then dismissed it under 12B6. Well, we'll see if that holds. And that's where a lot of the things that you've heard from, from the plaintiff, are turning the law on its head with regards to how these things work, because we're working with the public trust. Let me be quite clear with you. My point is that it's on that $12 million windfall to the city out here, spends on that characterization by the magistrate, judge, and the district court, 12A1 versus 12A6, is that correct? It may. It depends on how the court analyzes it. If we disagree with that, if we disagree with that, then where are we? Well, if the court, since jurisdiction is a de novo issue, I think that the court can decide jurisdiction on its own merit. If on the 12B6, if you find that the 12B6 was found in error, then you could remand the case back to the trial court. But we believe, Your Honor, that the record is clear, and those are not the appropriate actions for this court to take. I don't hear you, but to be clear, I would defer to you. You're a very sophisticated African. I appreciate that. But if we disagreed with you, then you would have to, then you're left with a takings claim. I'm sorry, I'm left with a takings claim? Is that what, I just didn't hear you. I won't hold you up anymore. Okay. So tell us again, specifically, what is the wrongdoing that you claim that these entities are trying to obscure or to keep from scrutiny? So, it is complicated, Your Honor, but in April of 2020, between the February and May time period, the Preston Hollow Capital received an order out of the Superior Court of Delaware and a litigation that they have against Nuveen, who is what they believe is a competitor of theirs with regards to the bonding projects. And in that case, Preston Hollow has alleged that the Nuveen Corporation has defamed their position in the market. And in that case, the court found evidence with regards to that defamation coming out of the fire dirt deals of Hutto. And so it is the comments and statements of Nuveen about the projects in Hutto, which were asserted that they are lying to the face of every person there and issuers, and they're going to bankrupt anybody they work with. Those are the allegations in the Nuveen case. If this litigation, this discovery, demonstrates that those issues are true, which is my client's experience, then that's going to have a significant effect on their Nuveen litigation as well, because the Hutto dirt deals, of which are a subject matter in this Delaware defamation case, will likely have significant impact on their operations. So that's kind of the situation that we're here. Secondly, this is a situation where the person driving all of this work, the architect of this loan that has these defects and was done this way was Winstead, the lawyers for the Preston Hollow Corporation. They were the ones that were orchestrating this. They were the ones that organized it. They were the ones that went through that process. And through that process, they participated in an open meetings executive session in violation of the Open Meetings Act, knowing, or should know, because they do this all the time with public entities, that participation in the closed meeting would violate the law. But they did it anyway. They're the ones that insisted that they not go to the Attorney General's office and present this as required by Chapter 431 with an argument that they were using an out-of-state issuer. And so it was their leading of the city that created all of these legal fallacies in the contract. And then they tried to foreclose on the contract. And finally, the city got out of the administrative and legal support that they had. It got new lawyers, and they started looking at what happened. It's like, oh my goodness. And this is not the only case, I'm sorry, that you're probably going to see, because we're trying to fix a lot for the public, because this is public dollars. And that's what the city of Hutto is doing here. It's not a money grab. It's not some kind of extraneous issue. The issue here as to why they lost the 12.5 million by res judicata is because they didn't plead it. That's it. When we started this, we wanted to make a deal with them, and they sued us. After they sued us, their silver bullet didn't work. And now it's their responsibility, and not the city of Hutto and its citizens, to insure them for their mistakes. And so, with that, the other thing is, is that in this case, for purposes of the taking, is that the taking did not change. There was a voluntary exchange of consideration, contractual obligations with money that was supposed to have occurred, which did not fully occur on February 13th. If you go six months later, and you start saying that if it's an ebb and issue, and therefore the contract doesn't exist, then the transaction didn't exist either. So you can't take one part of the void in this off and leave the other, even if, in fact, in reality, it did occur. And that's why those equitable- Your time has expired now. Yes, thank you. All right. Thank you, Mr. Pinkham. You've saved time for rebuttal. Thank you, Judge. Thank you. This case is coming to the court, as it did to the lower court, on a 12B motion to dismiss. The record, factual record, is obviously incomplete, and that is one of our complaints. The comments counsel made about the Nuveen and Delaware lawsuit are nowhere in the record for this court. Preston Hollow was the prevailing party in that lawsuit,  in which they are seeking damages. But counsel's comments to the court are completely outside the record as it relates to Delaware and Nuveen. The conduct that is in the record- Race judicata is a question. Yes, sir. Yes, race judicata is clearly before this court. We have asked for reversal and remand to litigate our takings case, which we believe is appropriate. In the alternative, we have asked for a reversal with instructions to dismiss without prejudice because we believe the lower court dismissal was necessarily one for an absence of jurisdiction. That is best evidenced in two different ways. The state, pardon me, the federal court had various state law counterclaims before it, filed by the defendants. It dismissed all of those counterclaims and refused supplemental jurisdiction, which we believe is an indication that this was a dismissal for lack of jurisdiction rather than on the merits. Point number two is the government, the city, litigated these exact same causes of action in state court and recently lost. But they filed cross-claims against us in the title company lawsuit, which they alerted the court to in their briefing in their 28-J letter. We advised the court in our 28-J letter in response that we obtained a summary judgment on those pleadings in our favor. All of that litigation stands in opposition to the notion that there could be race-juda effect because, as the court well knows, that would apply to the entirety of the transaction and to the parties, plural, not to a single party. I also, while we disagree that it is applicable narrowly to this case, I would highlight the M.W. Builders case out of the Northern District of Texas. In that case, Judge O'Connor granted dismissal in connection with the takings case, finding no jurisdictions and dismissed without prejudice based on the same logic applied by the magistrate judge in district court here, that any dismissal for lack of a taking case, for lack of a plausible taking case, would necessarily deprive the trial court of jurisdiction to decide anything further. And again, to reach that to conclusion, the district court in this case dismissed without prejudice all state law claims filed by the defendants. If the district court dismissed without prejudice claims before it, it certainly couldn't have dismissed with prejudice claims not pled before it, such as our state law claims. I do want to go back, Your Honor, Judge Smith, to a question you asked about state actor. We specifically alleged that the operations of the CDC, pardon me, Cottonwood, are governmental and not proprietary functions. That is on page 10 of the record on appeal. That pleading should have been adequate to overcome any objection in that regard as it relates to a 12B motion. We have clearly alleged state actors and state actions on behalf of both defendants. The city is a municipality subject to a taking claim. Cottonwood acted and its actions are fairly attributable to the city under Rundis. Fairly attributable actions include specifically, quote, being created exclusively for the purposes of benefiting the city. That's on page 10 of the record on appeal. In addition, in the loan agreement, the city explicitly discusses that it entered into two development agreements, that it entered into an interlocal agreement, that it empowered and authorized and created Cottonwood. And most importantly, the loan agreement specifically states the city authorized and instructed Cottonwood to enter into that agreement. So we have a municipality, we have Cottonwood as a local government corporation whose conduct is fairly attributable under Rundis to the city. That is sufficient to establish, and we have our pleadings that I've quoted to your honor at page 10 of the record. Those are sufficient to establish a state actor. Ultimately, Judge, or your honors, I would leave you with two questions. What valid consideration did the defendants give for the 12 and a half million dollars that they still have and refuse to return? And what entitles the defendants to retain Preston Hollows' private property? The only answer to those questions, the only conceivable answer to those questions would be a contract, and it is the very contract that the defendants publicly and repeatedly assert to be. Your time now has expired, Mr. Poole. Thank you, Judge. Thank you.